## SOUTHERN OIL & TAR CO. v. GREAT LAKES INS. CO.

District Court, W. D. Kentucky, at Louisville. May 31, 1928.

O'Neal & O'Neal and Henry J. Tilford, all of Louisville, Ky., for plaintiff.

Gordon & Laurent and Squire Ogden, all of Louisville, Ky., for defendant.

DAWSON, District Judge. On or about the 1st day of August, 1925, the defendant, Great Lakes Insurance Company, issued and delivered to the plaintiff, Southern Oil & Tar Company, an insurance policy on certain automobile equipment, including a five-ton General Motor oiler, by the terms of which policy the defendant insured the plaintiff against loss on or damage to the equipment mentioned resulting from fire at any time prior to noon on the 6th day of May, 1926, subject to the terms and conditions contained in the contract of insurance. The policy, among other clauses, contained these two provisions:

"This policy is made and accepted subject to the provisions, exclusions, conditions and warranties set forth herein or endorsed hereon, and upon acceptance of this policy the assured agrees that its terms embody all agreements then existing between himself and the company or any of its agents relating to the insurance described herein, and no officer, agent or other representative of this company shall have power to waive any of the terms of this policy, unless such waiver be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the assured unless so written or attached."

"*Cancellation.* This policy shall be cancelled at any time at the request of the assured, in which case the company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rate premium for the expired term. This policy may be cancelled at any time by the company by giving to the assured a five (5) days' written notice of cancellation, with or without tender of the excess of paid premium above the pro rata premium for the expired term, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand. Notice of cancellation mailed to the address of the assured stated in the policy shall be a sufficient notice."

This policy was written by John A. Vetter, agent for the company at Louisville, Ky. On December 29, 1925, the five-ton oiler was burned and partially destroyed by fire, the plaintiff claiming that the damage sustained on this oiler as the result of the fire was $3,500, for the recovery of which amount this suit was brought. Trial by jury was waived in writing by the parties and request made for a separation of findings of fact and conclusions of law.

The insurance company admits the execution and delivery of the policy and does not seriously question the amount of damage done to the truck by the fire referred to. It defends upon the ground that at the time the fire occurred the policy had been canceled. It is clear from the record that on December 17, 1925, the defendant company mailed by registered letter to the plaintiff the following notice:

"December 17, 1925.

"Registered Letter.

"Southern Oil & Tar Co., Clay & Fulton Sts., Louisville, Ky. Take notice that Pol-

icy No. AS 30607, issued to you by the Great Lakes Insurance Company, through its Louisville, Kentucky, agency, is hereby cancelled, said cancellation to be effective five days after receipt of this notice by you, at which time all liability of this company thereunder will cease and terminate. Excess of paid premium above the pro rata premium for the expired term will be refunded on demand. Please return policy to us.

"Great Lakes Insurance Company.
"By Wm. K. O'Connor."

This letter was received at the office of the plaintiff company in Louisville, Ky., on December 19, 1925, and if effective for the purpose for which it was sent, all liability under the policy ceased at the latest on December 25, 1925. The plaintiff seeks to avoid this plea of cancellation by what is designated as a plea in estoppel. This plea is in the following language:

"That on or about December 7, 1925, the plaintiff applied to one John A. Vetter, the general agent of the defendant in the City of Louisville, Kentucky, who had issued for the defendant the policy of insurance described in the petition, for additional fire insurance from the defendant covering said five ton oiler described in the petition and other equipment belonging to plaintiff which it desired to store during the winter; that on or about December 8, 1925, said general agent of the defendant called at plaintiff's office in the City of Louisville, Kentucky, and took possession of said policy of insurance, together with other insurance policies issued to plaintiff, for the purpose of effecting the changes desired, including the cancellation of certain liability insurance which plaintiff, according to its custom, desired cancelled during the winter months; that on or about December 8, 1925, while said general agent of the defendant was in plaintiff's office for the purpose aforesaid, and in consideration of plaintiff's application for additional fire insurance covering said five ton oiler and other equipment, said general agent, acting for and on behalf of the defendant, agreed and contracted with plaintiff that pending the issual of a new policy of fire insurance covering said five ton oiler and other equipment belonging to plaintiff, and until such new policy of insurance was issued, said policy of insurance described in the petition should remain in full force and effect, and that when said new policy was issued, and not before, said policy of insurance described in the petition should be cancelled and the unearned portion of the pre-

mium thereon applied in part payment of the premium on said new policy of insurance;

"That at the time the notice of cancellation referred to in the second paragraph of defendant's answer and counterclaim was received at plaintiff's office (which notice was sent from the home office of the defendant at Chicago, Illinois, through the mails) and for many days thereafter, all of the officers of plaintiff were absent from the City of Louisville, Kentucky, and that when said notice of cancellation was received at plaintiff's office, plaintiff's employee thereat, who was familiar with the terms of said agreement between plaintiff and said general agent of the defendant respecting said policy of insurance, understood therefrom that a new policy of insurance had been issued covering said five ton oiler and other equipment in accordance with the terms of said agreement, and for that reason ignored said notice of cancellation which did not come to the notice of plaintiff's officers, and of which plaintiff's officers had no knowledge until after the occurrence of the fire mentioned in the petition;

"That plaintiff did not discover until after said fire that no new policy of insurance had been issued; that the plaintiff was never notified by said general agent of the defendant that said policy of insurance described in the petition had been cancelled; and that by reason of the foregoing facts said attempted cancellation was ineffective and inoperative for any purpose; and that the defendant is estopped from claiming that said policy of insurance was not in full force and effect at the time of said fire."

In effect this plea is that Vetter, the agent of the company, for and in behalf of the company, surrendered and waived the right of the company, until such time as the new policies referred to had been issued, to cancel the old policy under the cancellation clause quoted above, and that this surrender and waiver of the right of the company to exercise the right of cancellation was effected in disregard of that provision of the policy, quoted above, which prohibited any agent of the company from waiving any of the terms of the policy unless such waiver was written upon or attached to the policy. Such is the inevitable result of plaintiff's contention, however much it may be attempted to disguise the result by dressing the plea in the clothing of an estoppel. That such a contention will not be upheld by the federal courts is now too well settled to call for discussion. See Hartford Fire Insurance

Co. v. Nance (C. C. A.) 12 F.(2d) 575 (6th Cir.), and cases there cited.

Aside from the rule of law just announced, which is fatal to plaintiff's claim, I do not think the facts in this case lend any support to the plaintiff's contention. Mr. Vetter, the agent of the company, who was introduced as a witness for the plaintiff, testifies that about December 7 or 8, 1925, he went to the office of the plaintiff company in response to a call, and that Mr. Robenson, the president and general manager of the company, told him that the company was placing its automobile equipment in storage for the winter months, and desired to cancel liability insurance on it and increase the fire insurance; that at his request Robenson delivered to him, among other insurance policies, the one involved in this case, to the end that the old policies might be canceled and new policies issued. Detailing what took place, the witness said:

"* * * And I said, 'I will take these policies with me and will have another policy issued in the amount you want for these policies and will submit it to the company. In the meantime, *these policies will apply until the new policy can be issued.*'

"Q. Now what did you say with reference to the fire insurance policy covering the 5-ton oiler, which oiler is described in the petition? A. I don't know just what you mean. That was just the same as the other.

"Q. What agreement did you make with the Southern Oil & Tar Company? A. I made the same agreement as this, *that the policy would continue in effect until I issued the new policies.* I was going to issue that in the same way with the amounts which I wrote to the company about.

"Q. What was said, if anything, about the cancellation of that policy and when it would be cancelled? A. There was not to be any cancellation because I was going to have a new policy issued on these trucks. The only question was, could I issue them in the amount he wanted or just leave the old amount stand while the property was in storage.

"Q. Was there any agreement as to what should be done, or anything said as to what should be done with the unearned premium? A. Of course, it was understood that that was to be applied on the premium of the new policy. If there was any addition, he would pay it; if it was less, it would be paid back; if anything was said.

"Q. What agreement was there as to the old policy remaining in force? A. Only as I said before, *the policies were to remain in force until new policies were issued,* of course.

"Q. 38 (Cross Examination.) You said to Mr. Robenson also, I believe, that the policies that he then had *would remain in force until the new policy was issued?* A. Yes, sir.

"Q. And that is what you meant when you said you had an agreement with him that the old policies would stay in force until new policies were issued? A. Yes sir. He was going away and that was the reason I got the insurance while he was gone, so they would be taken care of. *These policies would be in force until I brought him the new one.*"

Mr. Robenson in his testimony, after telling about calling for Mr. Vetter and expressing his desire to cancel the liability insurance and to increase the fire insurance, and of his intention to go to the hospital in Cleveland, stated that he delivered the policies then in force to Mr. Vetter, who said:

" 'Mr. Robenson, you can go and rest at ease, everything will be taken care of as good as when you are here. I hope you will be well when you come back' and he took the policies from me and naturally, I left everything in his hands when I left.

"Q. What did he say would be done about the old policies already in existence? A. Mr. Vetter took away the policies and said to 'rest easy.' I asked him *'what is the reason for taking the policies'* and he said *'it makes no difference, you are insured whether you have the policies or whether the policies are lost entirely. You have confidence in me, give me the policies and you will get new policies'* and naturally, I left and never worried at all.

"Q. Did he say anything to you about whether the policies would be in force until the new policies would be written? A. Yes, sir, he said 'you are insured, it makes no difference whether you have the policies or whether I have them, you are insured.' "

Mr. Hendricks, secretary and treasurer of the plaintiff company, in his testimony was asked:

"Were you present at the conversation between Mr. Vetter and Mr. Robenson on the 7th or 8th of December, 1925? A. Yes, sir.

"Q. What was said in that conversation? A. We sent for Mr. Vetter because every winter we took the liability off of the trucks and got more fire insurance when we stored them and Sam explained to him—

"The Court: Whom do you mean by Sam? A. Mr. Robenson. I didn't pay much attention to that. I am out on the road work and he told him he was going away to the hospital at Cleveland, that there was some-

thing wrong with his stomach and he wanted to get everything settled before he left. John (Vetter) took the policy and told him 'I will take these policies back to the office and notify the company exactly what you want.' They sent down and marked each one of the trucks. There were two White trucks and a G. M. C. truck Packard—no we didn't have that Packard then—we had five trucks and we took the liability off of those and added some fire insurance to them when we put them away. So John took the policy with him down to his office and that was the last I knew of it until the fire.

"Q. Did you hear the talk between Robenson and Vetter relative to these policies being taken away? A. *Yes, sir; he said the old policy would hold in force until we got the new policies. Of course that was satisfactory to all of us.*"

To me it is very clear that all of this conversation, relative to the old policies continuing in force, arose from the uncertainty in the minds of Robenson and Hendricks as to the rights of the Southern Oil & Tar Company under these policies after they had surrendered possession of them to Vetter. They were anxious to know if the insured lost any of its rights by delivering these policies to the agent of the company. Vetter truthfully answered that these old policies continued in force. There is nothing in the testimony from which I can conclude that Vetter unequivocally agreed with Robenson and Hendricks that in no event would these old policies be canceled prior to the issual of new policies. He simply stated to the officers of the insured that the old contracts of insurance continued in force. In other words, he represented to Robenson and Hendricks what was actually the law, viz., that the insured had the same rights under the old policies of insurance after they had been delivered into the possession of Vetter as it enjoyed prior to such delivery. The evidence fails to show any agreement or any attempt on the part of Vetter to make an agreement to alter or vary any of the terms of the contract. The right of the company to cancel the policies would have existed had they never been surrendered to Vetter. The same right existed after their surrender, and to hold that the representation of Vetter, that the policies continued in force after their delivery to him, was tantamount to an agreement that they would not be canceled until new policies were issued, and had the effect of estopping the defendant from pleading and proving cancellation under the cancellation clause, would not only be a perversion of the evidence, but a violation of settled principles of federal law, as well.

For the reasons stated, a judgment will be entered, setting out the findings of fact and conclusions of law as herein stated, and dismissing the petition at the cost of the plaintiff.